**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel., DARNELL CLAY, | ) ) ) | |
| Petitioner, | ) ) | No. 02 C 8370 |
| v. | ) ) | |
| DONALD A. HULICK, Warden, Illinois River Correctional Center, | ) ) ) ) ) | HONORABLE DAVID H. COAR |
| Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

Petitioner Darnell Clay's motion to vacate his sentence pursuant to 28 U.S.C. § 2254 is before this Court.[1] For the following reasons, the motion is denied.

**I.      BACKGROUND**

    **A.      Relevant Facts**

On January 29, 1998, following a jury trial in Cook County Circuit Court, Clay was convicted of two counts of aggravated kidnapping, and one count each of aggravated vehicular hijacking and armed violence. He was sentenced to concurrent prison terms of twenty-five years on each of the latter counts and fifteen years on the aggravated kidnapping counts. Briefly, Clay was convicted of kidnapping Shalonda Brown at gunpoint and forcing her into the back of her own car. At trial, Brown testified that Clay's co-defendant Willie McFadden forced to her call

---

[1] Donald A. Hulick is now the warden of Illinois River Correctional Center. John C. Battles was the warden at the time this petition was filed. The Court hereby amends the case caption accordingly.

her boyfriend, Gerald Walters, and demand $100,000 for her safe release. McFadden, Clay, and their third co-defendant Alvin Mitchell then allegedly took Brown to a motel on Chicago's west side. McFadden and Mitchell were arrested at the scene of the ransom pick-up. Clay was arrested at the hotel on the night of March 22, 1996.

B.     **Procedural History**

On direct appeal, Clay, who was represented by the public defender, argued that his right to a fair trial was violated because the prosecutor improperly assumed facts not in evidence in his closing argument to the jury. Specifically, Clay argued that the prosecution improperly presented a theory to the jury about what happened to the gun allegedly used during the kidnapping. No gun was recovered from the crime scene and Clay denied possessing or using a gun. In fact, no witness testified about what happened to the alleged gun. During his closing argument, however, the prosecutor discussed the gun and Brown's allegations that she was kidnapped at gunpoint and threatened with the gun during the course of her confinement. Clay contended that this argument overreached the evidence and assumed facts not in evidence. The Illinois Appellate Court disagreed, finding that the prosecutor's argument represented "legitimate inferences drawn from the facts and circumstances proved" and thus were permitted. *People v. Clay*, No. 98-1252, slip op., at 1 (Ill. App. Ct. Jun. 30, 1999) (citing *People v. Shum*, 512 N.E.2d 1183, 1193-94 (Ill. 1987)).

Clay filed a petition for leave to appeal to the Illinois Supreme Court on August 6, 1999, re-alleging that the prosecutor improperly assumed facts not in evidence relating to the gun in his closing argument. The Illinois Supreme Court issued a one-sentence denial of Clay's petition on October 6, 1999.

Shortly thereafter, on November 28, 1999, Clay filed a *pro se* post-conviction petition, claiming violations of his Sixth and Fourteenth Amendment rights and of his rights under Article 1, section 8 of the Illinois Constitution of 1970 because of ineffective assistance of counsel. In particular, Clay asserted that his counsel was ineffective because she failed to present a defense theory he advocated, and failed to interview and call an alibi witness, Cecil Hines, and one of Clay's co-defendants, Willie McFadden, to testify on his behalf. The trial court found that Clay could have raised his claims on direct appeal but had not done so. Despite this, the trial court reviewed Clay's ineffective assistance of counsel claim and found it without merit on February 23, 2000.

Clay appealed to the Illinois Appellate Court on March 23, 2001, alleging that the trial court erred in not finding his attorney's failure to call an alibi witness ineffective assistance of counsel, and that the trial court erred in sentencing because the sentence for armed violence based on ransom was unconstitutionally disproportionate to aggravated kidnapping with a handgun. The State responded, Clay replied, and the State filed a supplemental brief. The Illinois Appellate Court found that Clay did not satisfy the two-prong test for ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 687 (1984). After stating that "the decision whether to call a witness is considered a matter of trial strategy," *People v. Clay*, No. 00-1222, slip op., at 6 (Ill. App. Ct. May 24, 2002) (citing *People v. Kidd*, 175 Ill.2d 1, 45 (1997)), the appeals court noted that defendant stated in his motion for a new trial that he had "supplied information" about his alibi witness to his trial attorney. The appeals court found it reasonable to infer that "counsel knew the substance of Hines' testimony and decided not to call him," even though Hines stated that Clay's attorney never interviewed him. *People v. Clay*, No.

00-1222, slip op. at 7. The decision not to call a Hines was thus a trial tactic and did not support a claim of ineffective assistance of counsel. The appeals court, however, vacated Clay's sentences for the two counts of aggravated kidnapping because they violated the lesser-included offense doctrine.

On June 2, 2002, Clay filed a petition for leave to appeal to the Illinois Supreme Court, arguing that the lower courts erred in determining that his trial attorney's failure to call an alibi witness was trial strategy when she had never interviewed the witness and when the witness' testimony would have changed the outcome of the trial; and that the appellate court improperly inferred that Clay's trial attorney knew what his alibi witness would testify to because Clay had supplied only Hines' name and address to his attorney. The Illinois Supreme Court denied Clay's petition for leave to appeal on October 2, 2002.

### C. Habeas Petition

Clay filed a timely petition for habeas corpus relief in this Court on November 18, 2002. His petition asserts five claims for relief, four of which allege ineffective assistance of counsel by his trial attorney: 1) for failing to contradict the prosecution's case or seek out exculpatory evidence; 2) for failing to interview and call a defense alibi witness, Cecil Hines, who would have corroborated Clay's defense theory and testimony; 3) for not defending Clay against two aggravated vehicular hijacking counts, thereby denying him a fair trial; 4) for failing to contradict photographic evidence the State presented to the jury of an alleged injury the kidnapping victim sustained to her knee during the crime. The fifth claim asserted is that the state courts erred in applying the presumption to an attorney's failure to call a witness was based on trial strategy. On February 10, 2003, Clay filed a motion for an evidentiary hearing with this

Court, noting that the State had not yet answered his petition. The State responded to Clay's petition on March 23, 2003, asserting that claims three and four and portions of claim one were procedurally defaulted because he did not properly raise them before the state courts. This Court denied Clay's motion for an evidentiary hearing on August 25, 2003.

### D. Motion for Leave to Amend

On November 16, 2005, Clay filed a motion for leave to amend his petition for writ of habeas corpus. Clay requested leave to strike his third and fourth claims (aggravated vehicular hijacking and photographic evidence) and sought to re-present the grounds for claim one so as to avoid any procedural default concerns.

## II. STANDARD OF REVIEW

Section 2254 empowers federal district courts to hear petitions for a writ of habeas corpus on behalf of a person in state custody on the ground that he or she is in custody in violation of the Constitution, treaties, or laws of the United States. 28 U.S.C. § 2254(a) (1996); *see Wainwright v. Sykes*, 433 U.S. 72, 77 (1977). A federal court may only consider the merits of a writ of habeas corpus after the petitioner has (1) exhausted all available state court remedies; and (2) first presented any federal claim in state court. *See* 28 U.S.C. § 2254(c) (1996); *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *Jones v. Washington*, 15 F.3d 671, 674 (7th Cir. 1994). Any claim that has not been exhausted in the available state courts will be considered defaulted and therefore procedurally barred.

A federal court will not grant relief on claims that have been decided on the merits by state courts unless the state court's decision "was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United

States," 28 U.S.C. § 2254(d)(1) (1996), or "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2) (1996).

### III. ANALYSIS

As an initial matter, this Court must address Clay's motion for leave to amend his habeas petition. Because the federal habeas statute and its accompanying rules do not address motions to amend, courts look to Rule 15 of the Federal Rules of Civil Procedure. *See, e.g., Newell v. Hanks*, 283 F.3d 827, 834-35 (7th Cir. 2002); *see also Johnson v. United States*, 196 F.3d 802, 805 (7th Cir. 1999) (applying Rule 15 in § 2255 case). Rule 15(a) specifies that a party seeking to amend a pleading after a response has been filed must seek leave of court. It further states that "leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). In his motion to amend, Clay seeks to strike certain of the claims in his original petition and replead one other claim so as to clarify that it is not procedurally defaulted. Further, because this amendment makes no substantive change to the remaining claims in the petition, but essentially grounds claim one on fats identical to those asserted for claims two and five, the amendment does not prejudice the State. Further, this Court finds that the claim asserted "arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading" and therefore relates back to the date of the original pleading. Fed. R. Civ. P. 15(c)(2). Clay's motion to amend is GRANTED to the extent that the factual basis for claim one was also presented to the state courts.

The remaining claims before this Court are amended claim one, and claims two and five, all of which allege ineffective assistance of counsel.

### A.     Amended Claim One

Clay contends that his constitutional rights were violated when his attorney failed to "contradict" the prosecution's case against him and failed to seek out exculpatory evidence. Essentially, he argues that his attorney refused to proceed on Clay's theory of the defense, which was that Sharonda Brown conspired with Willie McFadden to fake her kidnapping in order to extort money from her boyfriend. Clay alleged that Brown was motivated to engage in such a scheme because she was angry that her boyfriend refused to stop seeing another woman. In his initial habeas petition, Clay presented facts relating to the trial that he did not present to the state courts. This is not allowed under the federal habeas statute. A petitioner must fully and fairly present each of his habeas corpus claims to the state courts, and must clearly state both the federal law and the facts supporting the claim. *See Momient-El v. DeTella*, 118 F.3d 535, 537 (7th Cir. 1997). In his state court petitions, Clay argued that his defense counsel was ineffective because she failed to call an alibi witness, not that she had failed to seek out "exculpatory evidence" or that she refused to try the case according to his theory of the defense.[2] Insofar as Clay did not present the factual basis for his claim to the state courts, his claim is procedurally defaulted here and this Court cannot reach it. But in his amended version of claim one, Clay focuses only on his theory that Hines' testimony would have shown that Brown was a willing

---

[2] Clay additionally argues that his attorney failed to argue that the state did not recover a black skull cap allegedly used to cover Brown's head during the kidnapping from the hotel room where the FBI discovered Clay and Brown, but rather that the cap belonged to Clay, who had been wearing it, and was taken from him for inventory at the police station after his arrest. He also argues that his attorney should have introduced information about palm and fingerprints taken from Clay and his co-defendants, ostensibly to compare with prints found in Brown's car. The State did not introduce palm or fingerprint evidence at trial. In addition, Clay argued that his attorney should have sought to impeach Brown with inconsistencies in her story. But the record shows that the defense did cross-examine Brown about her story and numerous contradictions.

participant in the scheme to extort money from Walters. He argues that if his attorney had called Hines as an alibi witness, the jury would have known defendant's theory. This is so closely intertwined with Clay's claims two and five that this Court will consider them all together.

    **B.    Ineffective Assistance of Counsel**

Clay alleges in his claim two that the state courts erred in finding that his trial attorney's failure to call an alibi witness was a trial strategy decision when his attorney had not interviewed the witness. Clay's claim five is that settled law states that the presumption that an attorney's failure to call a witness was trial strategy does not apply when the attorney has not interviewed the witness. These claims were first raised in Clay's post-conviction petition, which included an affidavit from Cecil Hines, averring that he was present in court on October 22, 1997, December 8, 1997, and January 26 and 27, 1998, ready to testify on Clay's behalf. Hines further averred that Clay's trial attorney, Maura Shapiro, subpoenaed him but never interviewed him. He was never called to testify. According to Hines' affidavit, he would have testified that he had an in-person conversation with Clay at about 10:30 p.m. on March 22, 1996, at Rayburn's Gas Station at Roosevelt Road and Kostner Avenue, Chicago, Illinois. Hines further would have testified that Clay was with another man in a white van, and that Hines left the location at about 10:30 p.m. He would have stated that he was familiar with the area and would have given his opinion that it takes easily forty-five minutes to an hour to drive from Rayburn's to 7945 S. Homan Street, the site of the kidnapping.[3]

---

[3] The timing was important because Brown alleged that she was kidnapped at approximately 10:50 p.m. on March 22, 1996.

Clay's post-conviction petition also included an affidavit from Willie McFadden, one of Clay's co-defendants. McFadden averred that he was willing to testify on Clay's behalf and that he would have stated that Shalonda Brown, the kidnapping victim, conspired with McFadden to trick her boyfriend, Gerald Walters, out of money. McFadden also would have testified that Clay never kidnapped Brown, held her against her will, or drove her car. Instead, McFadden averred that Brown met him and Clay at Rayburn's Gas Station on Chicago's west side at about 11:30 p.m. on March 22, 1996. In addition, McFadden would have stated that Clay had a conversation with Hines at that location shortly after 10:00 p.m. on that date. Clay contends that because his trial attorney failed to interview Hines,[4] his attorney provided ineffective assistance to him.

The State responds that the state courts properly applied the *Strickland* test to Clay's post-conviction petition claim. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In its analysis, the trial court found that Clay failed to show that his attorney's representation fell below an objective standard of reasonableness or that her performance was prejudicial to the defense. *Strickland*, 466 U.S. at 687. The fact that a different attorney, with the benefit of hindsight, might have made a different decision was not enough to establish ineffective assistance of counsel. *People v. Clay*, No. 96-CR-10520, slip op. at 7 (Cook Co. Cir. Ct. Feb. 23, 2000) (citing *People v. Trotter*, 701 N.E.2d 272, 275 (Ill. App. Ct. 1998)). Although an attorney's failure to call a defense witness may support an ineffectiveness claim, the petitioner must not only produce affidavits from the individuals who would have testified but must also explain the significance of their testimony. *People v. Dean*, 589 N.E.2d 888, 890 (Ill. App. Ct. 1992). After reviewing the Hines affidavit, the trial court found that Clay had failed to produce

---

[4] Clay does not make any argument about McFadden.

sufficient evidence to overcome the presumption that his attorney's failure to call Hines was a strategic trial decision.

In his appeal of the trial court's denial of his post-conviction petition, Clay alleged that the lower court erred when it found that his attorney's decision not to call Hines was a matter of trial strategy. When an attorney has not had contact with the witness and does not know the content of the witness' potential testimony, she cannot make a strategic decision. (Pet'r's Br. to Ill. App. Ct., at 9) (citing *People v. Truly*, 595 N.E.2d 1230, 1234 (Ill. App. Ct. 1992)). The State argued that Petitioner's *pro se* motion for a new trial stated that his trial attorney "led [Clay] to believe that Mr. Cecil Hines would be testifying based on information supplied to Defense Counsel concerning Defendants [*sic*] alibi." (Def.'s *pro se* Mtn. for New Trial, at 1). Thus, *Truly* did not apply. Clay's claim was governed instead by *People v. Flores*, 538 N.E.2d 431, 488 (Ill. 1989), which stated that a decision about whether to call a particular witness is a matter of trial strategy and not sufficient to show ineffective assistance of counsel. The Illinois Appellate Court found that Clay's attorney was not ineffective in her defense of Clay. Clay took the stand at trial and testified to his theory of the case, which was that Shalonda Brown was a willing participant in a "con" to fake her own kidnapping and get money from her boyfriend, who was "messing with" another woman. The Illinois Appellate Court set out the trial testimony from Brown, Walters, the law enforcement officials who investigated the case, and Clay. It then went on to note the language from Clay's *pro se* motion for a new trial that he had "supplied information" to his attorney about Hines, and concluded that it was a fair inference that the attorney knew the substance of Hines' testimony when she decided not to call him. Thus, the failure to call Hines was a trial tactic and did not support an ineffective assistance of counsel claim.

To be successful on his petition for habeas corpus, Clay must show that the state court decision was either "contrary to" or was an "unreasonable application of" United State Supreme Court precedent, or was based on an unreasonable determination of facts. 28 U.S.C. § 2254(d)(1)-(2). Clay attached his *pro se* motion for a new trial to his habeas petition, arguing that it shows he only provided Hines' name and address to his trial attorney. But the motion says that Clay believed "Hines would be testifying based on information supplied to Defense Counsel concerning Defendants alibi." It further states that Clay's trial attorney refused "Defendant's repeated requests to call Mr. Hines as a[n] alibi witness despite Mr. Hines' presence in the courtroom during trial." (Pet'n for Habeas Corpus, Ex. 13) This Court finds that the Illinois courts correctly identified and applied the *Strickland* standard. Further, the Illinois state courts did not make an unreasonable determination of the facts when they concluded that Clay's trial attorney's decision not to call Hines was a matter of trial strategy. From the record, it is reasonable to infer that she was aware of what Hines would testify to and that she decided that his testimony would not assist the defense. Another attorney might have decided differently, but that does not mean that Clay's attorney was ineffective. Clay's petition is denied as to amended claim one, claim two, and claim five.

## Conclusion

For the foregoing reasons, Clay's Petition for a Writ of Habeas Corpus is DENIED. This case is closed.

                    Enter:

                    /s/ David H. Coar
                    _____
                    David H. Coar
                    United States District Judge

Dated: **March 22, 2006**